## W. A. HAVEMEYER & CO. v. EXCHANGE NAT. BANK OF TULSA, OKL.[*]

(Circuit Court of Appeals, Eighth Circuit. September 7, 1923.)

No. 6243.

1. **Banks and banking ⊙═90—Agent bank bound to reasonable care only as genuineness of bill of lading.**

   A telegram from plaintiff's bank in Chicago to defendant bank in Oklahoma, "Notify and pay Southwestern Brokerage Co. $27,200 on delivery bills of lading two cars sugar containing 800 bags each shipped from Utah on December sixteenth and seventeenth," *held* not to make defendant insurer of the genuineness of the bills of lading presented and paid, but to require it only to exercise reasonable care in that regard.

2. **Banks and banking ⊙═90—Instructions to pay on bills of lading held to warrant payment on exchange bills.**

   Under such instructions it was not negligence for defendant to accept from the Southwestern Brokerage Company exchange bills of lading, purporting to have been issued by the Director General of Railroads in exchange for original bills covering the exact shipments described in the telegram, especially as the circumstances indicated what was the fact, that the shipments were to be diverted from their original destination to plaintiff at Chicago.

3. **Banks and banking ⊙═188½—Agent bank held not negligent in making payment on forged bills of lading.**

   Neither the face of exchange bills of lading, which were executed on regular railroad forms, nor the attendant circumstances, *held* such as to charge defendant bank with notice that such bills were not genuine, or to render it negligence for it to make payment thereon, as it was authorized by plaintiff to do, on the supposition that the bills were genuine.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action by W. A. Havemeyer & Co. against the Exchange National Bank of Tulsa, Okl. Judgment for defendant, and plaintiff brings error. Affirmed.

John M. Zane, of Chicago, Ill. (Charles F. Morse and Zane, Morse & Norman, all of Chicago, Ill., and Reeves & Harley, of Tulsa, Okl., on the brief), for plaintiff in error.

Charles E. Bush, of Tulsa, Okl. (W. F. Tucker and John Y. Murry, both of Tulsa, Okl., on the brief), for defendant in error.

Before STONE, Circuit Judge, and MORRIS and FARIS, District Judges.

STONE, Circuit Judge. This is an action by W. A. Havemeyer & Co., sugar brokers of Chicago, against the Exchange National Bank

of Tulsa, Okl., for the payment by the bank of $27,200 on two forged bills of lading. From judgment upon verdict for the defendant, the plaintiff sues this writ of error.

The bases of the action were violation of instructions concerning the payment and negligence in regard thereto. The error here urged is denial of a peremptory charge requested by plaintiff. The argument that there was no substantial evidence to authorize submission to the jury is divided into three points: That defendant was obligated to accept only genuine bills of lading; that the bills of lading taken by defendant were materially different from those required by the instructions covering the transaction; that the defendant acted negligently in taking these bills of lading.

[1] We are not weighers of the evidence but examine it with the sole purpose of ascertaining if there was a lack of substantial evidence to sustain the verdict. As the bills of lading were undisputed forgeries, if the defendant was required to accept none but genuine bills of lading, then the case should not have been submitted. This contention is, in effect, that the defendant was required to be an insurer of the verity of such bills. The evidence showing the situation and relation of these parties clearly reveals that no such onerous obligation was intended to be imposed nor did it exist. The obligations of the defendant are to be found in a telegram sent by the Ft. Dearborn National Bank of Chicago, which was representing plaintiff, to defendant, a correspondent of that bank. This telegram is as follows:

"Notify and pay Southwestern Brokerage Co. $27,200 on delivery bills lading two cars sugar containing 800 bags each shipped from Utah on December sixteenth and seventeenth."

Of course, this wire contemplated and could be understood only as meaning true bills of lading for no one would authorize payment on forged, worthless, bills of lading. However, such an instruction is far different from one requiring the defendant to ascertain at its peril that such bills were genuine and thus become an absolute insurer thereof. Such an added onerous obligation is unusual in like business dealings and will not legally attach unless it be shown that such added obligation was understood and undertaken by the parties. The rule of law ordinarily applying is that the agent shall use reasonable care in ascertaining that the bills offered are genuine. There is no evidence from which we can infer that the parties intended any such unusual meaning and resultant obligations as contended for by plaintiff.

[2] The second contention is that defendant departed materially from the instructions contained in the telegram when it accepted "diversion" or "exchange" bills of lading instead of the original bills of lading issued in Utah. What took place was this: The bills of lading taken purported to be bills of lading issued at Bartlesville, Okl., by the Director General of Railroads over the Atchison, Topeka & Santa Fé Railroad. Each bill was for a car of 800 bags of sugar. One bore the notation "This bill of lading issued in lieu of D. & R. G. Ry. B/L, dated 12—16—19, Lehi City, Utah;" the other a like notation except the date was "12—17—19." Thus, they purported to be bills of lading given in exchange for original bills of lading issued on two cars

of 800 bags of sugar each shipped from Utah on December 16th and 17th. The exchange bills covered the precise shipments described in the wire. The wire does not in terms require the bills of lading to be those originally issued by the receiving carrier and thus exclude exchange bills on the same shipments. Undoubtedly, the main thought of all parties would be bills of lading which would cover two carloads each of 800 bags of sugar shipped from Utah on December 16th and 17th. That result would be equally obtained whether the particular bills were original or exchange in form. There is nothing in the wire to advise defendant of the destination of the original bills. The identification in the wire is as to car contents and dates of shipment. From the fact that the payment was to be made to the Southwestern Brokerage Company, it may reasonably be inferred that the bills of lading intended would be issued to that concern, although the wire does not define or require this in express terms. It is contended that exchange bills of lading are not known by the law and the legal regulations governing interstate commerce, but they are well known and often used in connection with such shipments and, therefore, to the business world which has to do therewith. The most that can be said, in favor of plaintiff, is that the wire was ambiguous in respect to this claimed requirement. The defendant construed it to permit acceptance of exchange bills of lading. Likewise did the plaintiff. In a series of wires passing between it and the seller, the Southwestern Brokerage Company, in relation to this purchase, it made clear that it understood that the shipment was to be diverted to it by the brokerage company. Such a diversion would naturally occur through exchange of bills of lading changing the destination to Chicago. The wire sent defendant, as well as those between plaintiff and the seller, show that the purported shipments had been made 10 days before. The defendant would readily surmise the true transaction, that is, a purchase in transit. The natural method of consummating which would be by exchange bills of lading if the shipment was to be delivered at Chicago. In fact, had defendant known all that plaintiff knew about the transaction it would have been justified in believing, as it did, that exchange bills of lading were within the meaning of the instructions given it. We think that the instructions, under the existing circumstances, did not exclude exchange bills of lading.

[3] The above disposition of the first and second points urged by plaintiff leaves the last point, which is that defendant failed to exercise ordinary care, under the attendant circumstances, in accepting the bills of lading and paying out thereon the money of plaintiff. The plaintiff divides discussion of this point into two logical divisions: The circumstances surrounding payment and the showing on the face of the bills of lading. The entire evidence as to the circumstances surrounding payment is in the testimony of R. M. Moody, assistant cashier of the defendant, who accepted the bills of lading and authorized the payment. Moody had been assistant cashier of defendant between 6 and 7 years. As such, he had received bills of lading and paid out money on them. R. V. Brainard had been introduced as president of the Southwestern Brokerage Company to Moody by a vice president of another

bank in Tulsa. Moody testified that he did not know whether that concern was incorporated and never thought anything about that but supposed he (Brainard) was doing business in that name. He knew the Southwestern Brokerage Company was engaged as dealers and brokers in foodstuffs of all kinds. Theretofore, he had several times cashed drafts with bills of lading attached for Brainard where payment of the drafts were guaranteed. Brainard had first presented these bills of lading about the close of business hours on Saturday when Moody told him to bring them around Monday as he could not attend to them then. He did this without looking at the bills and because it would have interfered with the business of the bank at that time. Monday, Brainard again presented the bills. Moody compared them with the telegram and they seemed to cover the goods described in the telegram. He had Brainard indorse them and then took them to his superior officer, a vice president of the defendant, who had handled many bills of lading and asked him if the bills looked regular. They agreed that they did. He then issued Brainard a cashier's check for the amount, took the bills and in due time sent them to the Ft. Dearborn Bank. The foregoing are the circumstances attending the acceptance of the bills by defendant.

The things appearing upon the face of the bills which plaintiff contends should have warned Moody that the bills were spurious so that a disregard of them would constitute negligence are as follows: No railroad office stamp, routing, freight classification, statement of accumulated freight charges or separate verification by agent of the lieu bill of lading clause; only signature for carrier was typewritten name of agent with "per M" in indelible pencil; similarity in handwriting of shipper's signature and the "per M" notation of carrier agent's signature. While the bills revealed the matters upon which these objections are founded, the bills were on regular forms and there was, also, evidence that this form of signature by the railroad agent was not uncommon and that it would be impossible to compare handwriting where only a single letter (here M) was used. Also, it should be understood that these bills, on regular forms and made out completely covering the matters of most interest to shippers and users of such bills, were presented by one known to Moody, reasonably supposed, because of source of introduction and prior dealings, to be honest. It is, also, in evidence that the plaintiff placed these very bills as collateral with the Ft. Dearborn Bank to secure a loan and they were so deposited when the fraud was discovered. Considering all of these things we cannot say that negligence so clearly appeared as to remove that question from the jury.

In the argument, plaintiff presents the proposition that, after the forgeries were discovered, defendant could, by prompt action, have impounded the funds which had been deposited in another bank and thus have prevented the loss. This proposition is not within the issues made by this case and cannot be considered.

The judgment is affirmed.